**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-40114
Summary Calendar

SILVESTRE MORENO JR.,

Plaintiff-Appellant,

VERSUS

THE WESLACO INDEPENDENT SCHOOL DISTRICT,
JAMES D. LEHMANN, AND DR. HILLARY DUFNER

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(M 94 CV 32)

( September 14, 1995 )

Before GARWOOD, WIENER and PARKER, Circuit Judges.

PER CURIAM:[*]

Appellant Silvestre Moreno, Jr. ("Moreno") appeals the dismissal of his civil rights action against Appellees Weslaco Independent School District ("WISD"), James D. Lehmann ("Lehmann") and Hillary Dufner ("Dufner"). We affirm.

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

Proceeding pro se, Moreno, a school teacher, filed a civil rights complaint against WISD, Lehmann, the Superintendent of WISD, and Dr. Hillary Dufner, the principal of the Cuellar Middle School ("Cuellar"), which is located in WISD, alleging that Lehmann and Dufner conspired to force his resignation by engaging in discrimination, harassment, intimidation, and libel in violation of Moreno's constitutional rights.

## MORENO'S CONTENTIONS

Moreno alleged the following facts in his amended complaint:

During the 1991-92 school year, while employed at the Hoge Middle School, Moreno was appointed to be that school's representative on a textbook recommendation committee. Dufner was the district's administrator in charge of textbook adoption. Moreno and several other teachers engaged in "heated discussions" with Dufner about the preferable history textbook to be used. Dufner thereafter adopted an adversarial attitude toward Moreno and retaliated by engaging in discriminatory conduct.

Dufner became the principal of Cuellar in 1993, and Moreno was assigned to teach at Cuellar. In August 1993, Superintendent Lehmann met with several teachers at Cuellar to discuss complaints that had been made concerning Dufner's policies. Moreno was very vocal about his grievances during the meeting. Lehmann and Cuellar have conspired to violate Moreno's rights since that meeting occurred.

Moreno received a memorandum from Dufner in December 1993, directing Moreno to prepare a "Growth Plan" pertaining to a

2

particular teaching assignment. Moreno responded that such a requirement was in violation of a Texas statute, known as the Paperwork Reduction Act. Lehmann was made aware of the dispute but took no action on the matter. Dufner sent Moreno a second memorandum advising him to prepare a Growth Plan. Moreno resubmitted his original response, and Dufner responded that his objection and refusal to submit a Growth Plan had been noted in Moreno's file. Moreno alleged that this act was "libel per se" and defamed his character and reputation. Moreno filed a series of grievances relating to the notation in his file, which were denied. Moreno eventually received a memorandum from Dufner stating that he was removing the notation from Moreno's file because the Texas Association of School Boards and the Texas Education Agency could not provide any precedent on the issue.

Dufner also used the "Texas Teacher Appraisal System," a statutorily created evaluation system, to violate Moreno's equal protection rights. Dufner targeted him and "another Hispanic teacher on the same campus" by giving them both the lowest evaluation scores. He and the other Hispanic teacher had opposed Dufner's textbook recommendation two years earlier. Before this evaluation, Moreno had received high evaluation scores in his ten years as a teacher.

Moreno responded to the low evaluation scores by filing another grievance alleging that Dufner abused his duties as an evaluator. During the post-observation conference, Dufner advised Moreno that he would not be recommended to teach at Cuellar during

3

the upcoming 1994-95 school year.  Moreno requested an observation by another appraiser.  Dufner appointed Ana de Leon, one of his subordinates, and instructed her to cite Moreno for deficiencies to insure that he would again receive low evaluation scores.

Moreno subsequently met with Dufner and de Leon.  Dufner reprimanded Moreno for showing a video that had not been approved by his department head, and Moreno responded that he had received permission to show it.  Dufner instructed de Leon to cite Moreno for "any fictitious reason" and Moreno left the office to avoid further confrontations.  Moreno attempted to meet with Lehmann, who told him that he was too busy to meet with him.

Dufner continued to harass him after he filed the instant complaint.  Dufner "wrote up" Moreno for failing to attend a Departmental Meeting although he was not required to do so by statute.  Moreno applied to take a "school business day" in order to attend a court hearing, and Dufner treated it as a "personal day".  Dufner also demanded that Moreno attend a "summative conference," which would involve a review of Moreno's appraisal and performance during the school year.  Moreno declined to do so because his appraisal was part of his federal complaint and he did not wish to compromise his constitutional rights.

Moreno alleges generally that Appellees' actions were racially motivated, but recites no facts that would support that conclusion.

PROCEEDINGS IN THE DISTRICT COURT

Following a hearing, the district court dismissed Moreno's 42 U.S.C. § 1985 conspiracy claims, which order was not appealed

4

and denied the motion to dismiss his remaining claims without prejudice. In compliance with the district court's order, Moreno then filed his amended complaint.

At a subsequent hearing, the district court granted the defendants' motion to dismiss the constitutional claims and declined to exercise its supplemental jurisdiction over the state law claims. The district court determined that Moreno was a member of a protected class, being Hispanic-American, but that his allegations of racism were conclusional and that he had failed to allege that the defendants' conduct was related in any way to his race or national origin. The district court concluded that Moreno had failed to state an equal protection claim.

The district court further determined that Moreno had not alleged a due process claim because his employment had not been terminated, he had not been transferred, and his pay had not been reduced. The district court also concluded that it was not required to determine the issue of the school district's liability or the issue of qualified immunity because Moreno failed to state a constitutional violation.

STANDARD OF REVIEW

A dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo* using the same standard employed by the district court. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). "[A] claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support

of his claim that would entitle him to relief." *Id*.

EQUAL PROTECTION

Moreno argues that the district court failed to protect his "equal protection" rights because the facts alleged clearly indicated that he was discriminated against because of his Hispanic background. He contends that he is a member of a suspect class and therefore the action of the defendants is subjected to a strict scrutiny. He argues that Dufner treated him differently from other teachers by constantly harassing him in order to force him to resign, that Dufner discriminated against him and other Hispanic teachers by giving Anglo teachers preferential treatment in teaching assignments and other matters and by creating a hostile working environment for Hispanics.

The Equal Protection Clause directs states to treat "all persons similarly situated" alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). A claimant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). "Discriminatory purpose. . .implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group[.]" *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotations, citations, and footnote omitted). Classifications based on race, alienage, or national origin "are

6

subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Cleburne*, 473 U.S. at 440 (citation omitted).

"[A] plaintiff suing a public official under § 1983" fails to state a claim unless his complaint "rests on more than conclusions alone." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)(en banc). Moreno's conclusional allegations of discrimination based on his race do not allege facts reflecting that the defendant's actions were racially motivated. Rather, Moreno specifically alleged that Dufner retaliated against him because they disagreed about the appropriate history book to be used in the school district and because Moreno complained about Dufner's policies after he became principal of Cuellar. These allegations did not reflect that Dufner's actions were racially motivated.

However, Moreno alleged in his amended complaint that Dufner had "targeted" Moreno and another Hispanic teacher because they had opposed his earlier textbook recommendation. Moreno also made general assertions in response to the defendants' motion to dismiss that Dufner discriminated against two other Hispanic teachers by denying their grievances and that Dufner gave preferential treatment to Anglo teachers. Arguably, these assertions made in response to the defendants's motion to dismiss should have been construed by the district court as a motion to amend the complaint. *See Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972) (opposition memorandum to summary judgment motion raised a new issue and should have been construed as an amendment to the

7

complaint).  However, any such error is harmless because Moreno has failed to allege an equal protection claim even if the allegations are considered.  FED. R. CIV. P. 61.

"The equal protection clause is not violated solely because an action has a racially disproportionate impact if it is not motivated by a racially discriminatory purpose."  *Coleman v. Franklin Parish Sch. Bd.*, 702 F.2d 74, 77 (5th Cir. 1983). Moreno did not allege facts that would establish that Dufner treated Hispanic teachers differently because of their national origin.  Moreno has not supported his assertion that Anglo teachers are given preferential treatment with any specific factual allegations.  Nor has he alleged facts in his complaint showing that a specific Hispanic teacher left his position at the school based on Dufner's conduct.  Moreno has failed to allege the existence of discriminatory action that must be subjected to a "strict scrutiny" test.  Moreno's complaint failed to state an equal protection claim.

DUE PROCESS

Moreno argues that the district court did not protect his "due process" right to engage in his profession.  He argues that the defendants recklessly violated state statutes in order to create a hostile work environment and that he has a liberty interest in being free from a hostile working environment.  He argues that the defendants' conduct is subject to strict scrutiny.  "To state a substantive due process claim[,] a plaintiff must show that the government's deprivation of a property interest was arbitrary or

8

not reasonably related to a legitimate governmental interest." *Williams v. Texas Tech. Univ. Health Sciences Ctr*., 6 F.3d 290, 294 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1301 (1994).

Moreno has failed to allege facts that show that he has been deprived of a protected property or liberty interest. Moreno is complaining about administrative requirements imposed on him by Dufner allegedly in violation of state law. Such administrative decisions do not rise to the level of a constitutional violation. *See Dorsett v. Bd. of Trustees For State Colleges and Universities*, 940 F.2d 121, 123 (5th Cir. 1991). "Judicial evaluation of academic decisions requires deference and they are overturned only if they are `such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Williams*, 6 F.3d at 294 (citation omitted). Even if requiring Moreno to prepare a Growth Plan prior to his appraisal was technically a violation of state law, such administrative decision was not such a "substantial departure from accepted academic norms" as to result in a constitutional violation.

Moreno also complains about Dufner's placement of a notation in Moreno's personnel file indicating his refusal to comply with the request and about Dufner giving Moreno a poor teaching evaluation. Moreno must show a "stigma" resulting from "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant," and an "infringement" that "significantly alter[ed] a life, liberty, or property interest

recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that have been incorporated." *See San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701-02 (5th Cir. 1991) (internal quotations and citations omitted).

Moreno does not contend that Dufner's notation that he refused to submit a Growth Plan is a false statement and he acknowledged that the notation has now been removed from his file. Although he argues that Dufner's evaluation of his teaching ability is baseless, Moreno does not allege that he has lost his teaching position, his tenured status, or his salary and benefits as a result of the evaluation or the notation in his personnel file. Thus, he has not alleged facts indicating that he has been deprived of a liberty or property interest as a result of false statements made by Dufner.

Moreno's allegation that the defendants have created a hostile working environment unaccompanied by an allegation that he has been deprived of his teaching position does not give rise to a substantive due process right. *See Dorsett*, 940 F.2d at 123 (the alleged retaliatory acts were nothing more than decisions concerning teaching assignments, administrative matters, and department procedures and, although significant to the plaintiff professor, did not rise to the level of a constitutional violation); *see Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130-31 (1st Cir. 1991) (the right to employment free from verbal harassment does not warrant substantive due process protection).

Moreno argues that *Dorsett* and *Santiago* are distinguishable

10

from his case because "race" was not a factor in those cases and the courts did not take a "strict scrutiny" approach. As previously discussed, Moreno did not allege facts showing that Dufner's actions were racially motivated. Further, the "strict scrutiny" test is used in determining an equal protection claim and is not applicable in determining whether an individual has a liberty interest subject to due process protection.

Moreno also argues that his case is analogous to the sexual harassment cases based on an employer's creation of a hostile work environment for members of one sex. Although Moreno raises this issue in conjunction with his substantive due process claim, it actually raises an equal protection claim. The case relied on by Moreno, *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896-97 (1st Cir. 1988) recognized that sexual discrimination violates the equal protection clause as well as Title VII and Title IX of the Civil Rights Act of 1964. "To make out a prima facie case of hostile environment harassment, the plaintiff must show that he or she was subjected to unwelcome sexual advances so `severe or pervasive' that it altered his or her working or educational environment." *Id*. at 898 (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). Moreno's allegations concerning Dufner's conduct, even if proved, did not show that the defendant engaged in discriminatory conduct which was sufficiently severe so as to create an abusive work environment for Moreno. Further, even if the defendant created a hostile working environment, Moreno's allegations do not reflect that the conduct was racially motivated. Moreno's

11

allegations do not support a claim based on a hostile working environment.

Moreno also makes the closely related argument that Dufner's used the "constructive discharge" method in order to compel him to resign. A "constructive discharge" occurs "if the employer deliberately makes an employee's working condition so intolerable that the employee is forced into an involuntary resignation." *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980). Moreno's complaint does not reflect that he has resigned his position. Further, his allegations do not reflect that Dufner imposed working conditions that are so abusive that a reasonable person would have felt compelled to resign his job. Moreno's allegations of "constructive discharge" do not support a due process claim.

PROCEDURAL DUE PROCESS

Moreno also argues that he was denied procedural due process by the school district's policy of immunizing its supervisory personnel from grievances in an attempt to avoid judicial complaints. A governmental entity can be held liable under § 1983 only if official policy or custom caused the deprivation of a constitutional right. *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978). Official policy includes a persistent, widespread practice of officials, which, although not authorized by officially adopted or promulgated policy, is so common and well-settled as to constitute a custom that fairly represents policy. *Fields v. South*

12

*Houston*, 922 F.2d 1183, 1191-92 (5th Cir. 1991).

In his response to the defendants' motion to dismiss, Moreno alleged that after discovery he will be able to prove that all teachers' grievances against supervisors are processed by the school district in a discriminatory manner. However, he further asserted that his grievances and the grievances of two Hispanic teachers were denied at all levels. Thus, it is not clear whether Moreno is arguing that it is the policy of the school district to rule against all teachers filing grievances against supervisors or Hispanic teachers only.

However, under either scenario, Moreno has not alleged facts to support his claim that the school district was biased in addressing his grievances. "An impartial decisionmaker is a basic constituent of minimum due process." *Megill v. Bd. of Regents of State of Fla*., 541 F.2d 1073, 1079 (5th Cir. 1976). However, Moreno's allegations that the school district was biased against him is based solely on speculation regarding other Hispanic teachers and the fact that all of his grievances were denied during the grievance process. These allegations do not support a finding of actual bias on the part of the school district members. Moreno has failed to allege facts, which if proved, would show that the school district has a policy of routinely denying grievances of teachers who have been deprived of their constitutional rights by their supervisors.

DELIBERATE INDIFFERENCE

Moreno argues that defendant Lehmann is liable to him because

13

he acted with deliberate indifference to Dufner's violation of Moreno's constitutional rights. He argued that Lehmann knew or should have known of his hostile work environment resulting from Dufner's racial discrimination, bias, and harassment against Moreno. He does not allege that Lehmann personally performed any illegal acts.

A supervisory official can be held personally liable for subordinate's constitutional violation if the claimant establishes that the supervisory official learned of facts or a pattern of constitutional deprivation and demonstrated deliberate indifference by failing to take action. *Doe v. Taylor Indep. Sch. Dist*., 15 F.3d 443, 454 (5th Cir. 1994)(en banc), *cert. denied*, 115 S. Ct. 70 (1994).

As previously discussed, Moreno has failed to allege facts showing that Dufner engaged in conduct that violated Moreno's constitutional rights. Thus, Lehmann could not have been aware of facts reflecting that Moreno had been denied his constitutional rights by Lehmann's subordinate. Moreno has failed to state a claim against Lehmann in his supervisory capacity.

FIRST AMENDMENT

Although this case does not come to us in the posture of a First Amendment claim, we view the facts as set out by the pro se appellant's pleadings in that light. A *pro se* complaint is to be construed liberally with all well-pleaded allegations taken as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). Even a liberally construed *pro se* complaint, however, must set forth

14

facts giving rise to a claim on which relief may be granted. *Id.* Moreno's pleadings, liberally construed, did not plead facts on which relief could be granted on a First Amendment claim.

In order to succeed on a First Amendment claim, Moreno has to establish that he spoke out on a matter of public concern and his exercise of that right was a motivating factor in an adverse employment decision. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977). Moreno's pleadings allege that he spoke out about the issue of the appropriate history textbook to be adopted for use in a public school during a school district textbook selection committee meeting. Any statements made by Moreno in that context were protected by the First Amendment. However, because Moreno's pleadings fail to allege an adverse employment decision, he has stated no violation of the First Amendment.

## LIBEL

Moreno argues the merits of his state law libel claim on appeal. The district court declined to exercise its supplemental jurisdiction over the state law claims. A district court may decline to exercise supplemental jurisdiction over state-law claims if the court has dismissed all claims over which it has original jurisdiction. 18 U.S.C. § 1367(c)(3). Because the district court properly dismissed all of the claims that provided it with original jurisdiction in the case, the dismissal of the supplemental state-law claims was not an abuse of discretion under § 1367. *See Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992).

15

CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Moreno's case.